UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 08-649-JBC**

**PNC BANK NA,**                                                                        **PLAINTIFF,**

**V.**                     **MEMORANDUM OPINION AND ORDER**

**ROBERT L. MARTIN,**                                                     **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on plaintiff PNC Bank NA's motion for summary judgment (R. 14). The court will grant the motion as to liability and damages, because the defendant, Robert L. Martin, fails to raise any genuine issue of material fact, and the evidence establishes that Martin breached his transfer warranties and account agreement with PNC. The court will deny the motion as to recovery of attorney's fees, because PNC fails to provide a sufficient legal basis for awarding them. The court will also deny the motion as to loss of interest and expenses, because PNC fails to provide a calculation of those items.

**I. BACKGROUND**

Martin, an attorney, received an e-mail message on August 16, 2008, from a person who called himself Roman Hidotashi. Hidotashi claimed that he was a representative of Chipang Lee Song Manufacturing Company and needed to hire a lawyer to collect millions of dollars from past-due accounts of North American customers. Martin agreed to represent the company.

On September 8, 2008, Martin received a check for $290,986.15 from a

purported Chipang Lee Song Manufacturing Company customer, even though Martin had yet to commence any collections work. The check, which was drawn on First Century Bank USA, NA, arrived in an envelope with a Canadian postmark and no return address. The check was accompanied by an undated transmittal letter. Martin endorsed the check and deposited it in his client trust account at PNC. Martin then e-mailed Hidotashi, reported that he had deposited the check, and stated that he would await further instructions.

Hidotashi responded to Martin's e-mail message on September 9, 2008. Hidotashi stated that he had an "immediate need for funds" and instructed Martin to wire $130,600 to a bank account in Tokyo. Martin went to PNC's main office in Louisville the next morning and met with representative Craig Friedman. According to Martin, Friedman advised that the check Martin deposited had cleared. R. 14 Ex. 2 at 133-34. Martin instructed Friedman to wire $130,600 to the Tokyo account.

Martin returned to PNC later the same day. According to Martin, Friedman accessed Martin's account information and said, "I don't understand this. The check was cleared yesterday. Let me go find out what is going on." R. 20 at 2. Friedman returned with PNC vice president and branch manager Sherry Jennewein, who informed Martin that the check was fraudulent. According to Martin, Jennewein told him that she wished he had met with her instead of Friedman because she never would have authorized the wire transfer. R. 14 Ex. 2 at 137-38.

First Century Bank, on which the check was drawn, dishonored the check. PNC charged Martin's account for $290,986.15. PNC, however, could not recover the $130,600 the bank had wired to the Tokyo account. Martin's account, as a result, was left overdrawn by $124,313.01.

PNC commenced this action. PNC asserts one count for Martin's alleged breach of the transfer warranties provided in Kentucky's version of the Uniform Commercial Code and one count for breach of Martin's account agreement. PNC moves for summary judgment on both counts.

## II. DISCUSSION

### A. Breach of transfer warranties

PNC is entitled to summary judgment on its breach-of-transfer-warranties claim because the undisputed facts establish Martin's liability.

Transfer warranties trigger when a person transfers an instrument for consideration. KRS § 355.3-416(1) (adopting UCC § 3-416(a)). A transfer, for purposes of the statute, occurs when an instrument is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. KRS § 355.3-203(1). Martin transferred an instrument to PNC when he endorsed the check and deposited it in his account, thereby granting PNC the right to enforce the check. *Quimby v. Bank of America*, No. CV-08-1056-ST, 2009 U.S. Dist. LEXIS 98575, at *31 (D. Or. Sept. 21, 2009). Consideration, for purposes of the statute, need only be enough to support a simple contract.

3

KRS § 355.3-416(1) cmt. 1. Martin received consideration from PNC because PNC made the funds provisionally available before confirming whether First Century Bank would honor the check.

As a warrantor, Martin made a number of representations to PNC, including representations that he was entitled to enforce the check and that all signatures on the check were authentic and authorized. KRS § 355.3-416(1). Martin breached his warranties twofold. First, he was not entitled to enforce the check because the check was a counterfeit and, as a result, Martin had nothing to enforce. Second, the drawer's signature was not authentic because the check was a counterfeit.

Martin does not dispute these facts. Instead, Martin argues, summary judgment is inappropriate because Friedman and Jennewein admitted that PNC made a mistake when Friedman said that he thought the check cleared and Jennewein said that she never would have authorized the wire transfer. Friedman's and Jennewein's statements are immaterial facts. The transfer warranties placed the risk of loss on Martin, regardless of whether PNC, Martin, or both of them were at fault. *See Quimby*, 2009 U.S. Dist. LEXIS 98575, at *31. Martin, in any event, fails to support Friedman's and Jennewein's statements with firsthand deposition testimony or affidavits, so the statements do not qualify as competent evidence. *See McDonald v. Seabold*, 780 F.2d 1022 (6th Cir. 1985); Fed. R. Civ. P. 56(c)(2), (e)(1).

Martin claims that the risk of loss falls on the bank. But the cases Martin

cites in support of that proposition suffer from two defects. First, all but one of the cases were decided before the Kentucky General Assembly adopted the Uniform Commercial Code. Martin fails to argue, much less demonstrate, that his cases are good law. *See generally* Ky. Leg. Research Comm'n, *Uniform Commercial Code: Analysis of Effect on Existing Kentucky Law* (1957); and KRS Ch. 356 (repealed). Second, Martin's cases are inapposite even if they are good law. KRS § 355.3-416(1) addresses whether a transferor or transferee bears the risk of loss. Martin's cases address who bears the risk of loss as between other players: a drawee bank and a collecting agent (*United States v. Citizens Union Nat'l Bank*, 40 F. Supp. 609 (W.D. Ky. 1941)); a drawer and a drawee bank (*Commonwealth, for Use of Coleman v. Farmers Deposit Bank of Frankfort, Ky.*, 95 S.W.2d 793 (Ky. Ct. App. 1936); *Ky. Title Sav. Bank & Trust Co. v. Dunavan*, 266 S.W. 667 (Ky. Ct. App. 1924); and *Commercial Bank v. Arden & Fraley*, 197 S.W. 951 (Ky. Ct. App. 1917)); and an execution creditor and drawee bank (*J.M. Robinson & Co. v. Bank of Pikeville*, 142 S.W. 1065 (Ky. Ct. App. 1912)). The one modern case that Martin cites is also inapposite because the case involves a drawer and a drawee bank. *Bullitt County Bank v. Publishers Printing Co.*, 684 S.W.2d 289 (Ky. Ct. App. 1983).

In sum, the court must grant summary judgment in PNC's favor on the breach-of-transfer-warranties claim because the parties do not contest any material facts, which establish Martin's liability.

B. Breach of contract

PNC is also entitled to summary judgment on its breach-of-contract claim because the undisputed facts establish Martin's liability.

To support its allegation that a contract existed, PNC filed copies of Martin's account agreement and Martin's accompanying signature card. R. 14 Ex. 1, 7. Under the agreement's terms, Martin agreed to bind himself to the agreement by signing the signature card. *Id*. Ex. 7. Martin does not dispute that the account agreement was a binding contract, and he does not dispute the account agreement's terms.

Martin's account agreement authorized PNC to charge Martin's account for the value of any item returned to PNC unpaid or any item on which PNC did not receive payment. *Id*. If PNC's charge-back created an overdraft, Martin was required to pay PNC the amount of the overdraft immediately. *Id*.

The scam of which Martin was a victim falls squarely within the charge-back provision of the account agreement. The check was returned to PNC unpaid. PNC charged Martin's account, leaving it with an overdraft. Martin was obliged to pay PNC immediately.

As with the breach-of-transfer-warranties claim, Martin cannot defend against the breach-of-contract claim by arguing that PNC made a mistake. The account agreement authorized PNC to charge back Martin's account "even if the amount of the item has already been made available to you." *Id*. The account

6

agreement, as a result, placed the risk of loss on Martin. Any mistake on PNC's part was immaterial because PNC always had the right to charge back Martin's account. *See Quimby*, 2009 U.S. Dist. LEXIS 98575, at *31.

### C. Martin's counterclaims

Martin has asserted counterclaims for violations of various Uniform Commercial Code provisions; negligence and failure to exercise ordinary care; negligent misrepresentation; breach of contract and breach of the implied covenants of good faith and fair dealing; detrimental reliance; conversion; and negligent retention and supervision. Martin argues that "[t]o the extent that either party should be entitled to summary judgment in this case, it would be Martin with respect to his counterclaims against PNC." R. 20 at 4. Martin, however, has not moved for summary judgment on his counterclaims, and the court does not address them on PNC's motion.

### D. Damages

PNC's recovery under both theories of liability is contingent on PNC's demonstrating that it acted in good faith. PNC may recover for breach of the transfer warranties only if it took the check in good faith. KRS § 355.3-416(2). Moreover, PNC must satisfy the implied covenant of good faith and fair dealing, which Kentucky law incorporates in the account agreement. *Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003). Good faith, under both theories, means honesty in fact and the observance of reasonable commercial

standards of fair dealing. *See id.* and KRS § 355.1-201(t). That means "contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Ram Eng'g & Constr.*, 127 S.W.3d at 585.

The undisputed evidence establishes that PNC acted in good faith. PNC accepted deposit of Martin's check, attempted to present the check for payment at First Century Bank, and charged back Martin's account when the check was dishonored. Martin cannot claim that PNC lacked good faith and fair dealing when PNC took actions permitted under the contract. *Farmers Bank and Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citation omitted). Although PNC might have had the ability to investigate the authenticity of the check before crediting Martin's account, PNC bore no such obligation because Martin warranted that the check was authentic. KRS § 355.3-416(1). Friedman's and Jennewein's statements do not impute a lack of good faith to PNC, even if Martin could support the statements with competent evidence. The Uniform Commercial Code and the account agreement place the risk of loss on Martin, even if PNC made a mistake.

Martin suggests that an insurance carrier might have already reimbursed PNC for the loss. R. 20 at 5 n.2. Martin, however, presents no evidence of reimbursement, which PNC, presumably, would have disclosed in discovery.

PNC, therefore, may recover from Martin the overdraft value of $124,313.01, which is the loss PNC suffered as a result of Martin's breach of the

transfer warranties and breach of contract. KRS § 355.3-416(2); R. 14 Ex. 7. PNC, however, may not recover attorney's fees from Martin, because PNC fails to provide a legal basis for such a recovery. The account agreement does not provide for attorney's fees in the event PNC prevails in a dispute. *See* R. 14 Ex. 7. Attorney's fees could fit in the definition of "expenses" in KRS § 355.3-416(2), but the statute defers to other state law to define whether attorney's fees are recoverable as expenses. *Id*. cmt. 6. PNC fails to provide any state law on which the court can rely to conclude that recovery of attorney's fees is permitted. Finally, PNC may not recover for other expenses or loss of interest, because PNC does not provide calculations of those items.

## III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that PNC's motion for summary judgment (R. 14) is **GRANTED IN PART** to the extent that summary judgment is granted on Counts I and II of the complaint and PNC is permitted to recover $124,313.01 from Martin.

**IT IS FURTHER ORDERED** that PNC's motion for summary judgment (R. 14) is **DENIED IN PART** to the extent that PNC may not recover loss of interest, expenses, or attorney's fees from Martin.

**IT IS FURTHER ORDERED** that the parties shall submit a proposed scheduling order for the remainder of this action within fourteen days of the date of this order.

Signed on  August 18, 2010

                                                       **Jennifer B. Coffman, Judge**
                                                       **United States District Court**