**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CIVIL ACTION NO. 08-649-C**

**PNC BANK NA,**                                                                               **PLAINTIFF,**

**V.**                      **MEMORANDUM OPINION AND ORDER**

**ROBERT L. MARTIN,**                                                     **DEFENDANT.**

\* \* \* \* \* \* \* \* \*

This matter is before the court on PNC Bank's motion for summary judgment on Robert Martin's counterclaim (R. 25). Because Martin has raised a genuine dispute of material fact regarding his claim for negligent misrepresentation, the court will grant the motion in part and deny it in part.

Martin fell victim to an email scam in which he agreed to represent a purported foreign company in its efforts to collect on delinquent domestic accounts. Martin then received a check for $290,986.15 from an alleged customer of the foreign company, which he endorsed and deposited in his client trust account at PNC. When Martin emailed his contact to report the deposited check, the contact responded that he had an immediate need for funds and instructed Martin to wire $130,600 to a bank account in Tokyo.

Martin went to PNC's main office the next morning and met with representative Craig Friedman, who advised him that the check had cleared and that the funds were available. Martin then instructed Friedman to wire $130,600 to the Tokyo account. Martin returned to PNC later the same day and spoke with

Friedman again, who accessed his account and said, "I don't understand this. The check was cleared yesterday. Let me go find out what is going on." Martin asserts that Friedman then returned with PNC vice president and branch manager Sherry Jennewein, who informed Martin that the check was fraudulent, and stated that she wished Martin had met directly with her instead of Friedman concerning the deposit and wire transfer because she would not have authorized the transaction.

First Century Bank, the drawee bank, dishonored the check and PNC charged back Martin's account for $290,986.15. Because PNC could not recover the amount of the wire transfer to the Tokyo account, Martin's account was overdrawn. PNC applied the prior account balance of $6,286.99 toward the overdraft, leaving Martin's account overdrawn by $124,313.01.

This court previously granted summary judgment to PNC on its claims against Martin for his breach of UCC transfer warranties and for his breach of his Account Agreement with PNC. *See* R. 22. That order did not resolve the counterclaim Martin brought against PNC, in which he asserted claims for violations of the Uniform Commercial Code; negligence; negligent misrepresentation; breach of contract and breach of the covenant of good faith and fair dealing; detrimental reliance; conversion; and negligent retention and supervision. PNC has now moved for summary judgment on Martin's counterclaim. The court will grant the motion in part and deny it in part because although Martin raises a genuine dispute of material fact in his claim for negligent misrepresentation, he fails to do so in his

other claims. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on PNC's motion for summary judgment on its own claims, this court made findings that directly bear on Martin's counterclaim. The Account Agreement between Martin and PNC is a binding contract between the parties. *See* R. 22 at 6. PNC acted in compliance with the Agreement in charging back Martin's account for the value of the dishonored check. *Id*. When that caused Martin's account to be overdrawn, PNC acted within its rights under the Agreement when it deducted the balance of Martin's account as payment toward the overdraft. *Id*. PNC bore no duty to Martin to investigate the authenticity of the check because Martin warranted that the check was authentic in transferring it to the bank. *Id.* at 8; *see* KY. REV. STAT. ANN. § 355.3-416(1). Accordingly, any mistake on PNC's part was immaterial because the Agreement and the Uniform Commercial Code placed the risk of loss solely on Martin. *Id*. at 7-8.

These prior findings dictate that Martin's counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, negligence, and conversion necessarily fail. Because PNC acted within its rights provided by the Agreement, it did not breach its contract or the covenant of good faith and fair dealing. *See Farmers Bank and Trust Co. of Georgetown, Ky. V. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). Likewise, PNC was not negligent in failing to verify the authenticity of the check or in failing to confirm availability of funds before making the wire transfer because it had no duty to do so, as the risk

3

of loss was on Martin. Because PNC had a right to charge back Martin's account under the Agreement, Martin did not have a right to possession of the funds in the account when charge-back occurred, *see Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005); therefore, no conversion occurred. Summary judgment is appropriate on those claims.

Martin attempts to buttress his claims for negligence and breach of contract with the fact that the legitimate funds contained in his account at PNC were those of his clients, and he argues that PNC had no right, under the Agreement or the UCC, to apply his clients' funds to cover the overdraft of the account. But the fact that Martin held the funds as a trustee for his clients instead of as his own property is immaterial. Martin fails to cite any language in the Agreement that makes PNC's rights contingent on the type of funds in the account. On the contrary, the Agreement defines the account as a business account rather than any kind of trust account, and Martin has provided no evidence that PNC had any reason to treat the account as anything other than Martin's own property. In addition to granting PNC the right to directly charge the account for any overdraft amount, the Agreement also provides that PNC holds a security interest in "the balance of the Account." R. 14-12 at 4. The Agreement gives PNC rights to the funds in the account without regard for the proper owner of those funds. Martin has not presented any other authority for his position that the nature of the funds as being held in trust affects PNC's rights.

Martin further attempts to make issues of his factual assertions that PNC had been previously warned of scams such as the one underlying this case through "security alerts," and that the returned checks adversely affected his law practice and client relationships. These issues are immaterial first because the risk of loss was always on Martin, and second because Martin does not assert that he ever informed PNC's representatives of the circumstances surrounding the check or that he made PNC aware of the nature of the funds in the account.

Martin has also asserted, but has not argued, claims under the UCC and a claim for negligent retention and supervision that also fail as a matter of law. Martin's claims under the UCC, citing KRS §§ 355.1-103 (UCC displaces common law claims), 355.3-419 (rights and obligations of accommodation parties), and 355.3-406 (negligence contributing to forged signatures or alterations of an instrument), are not on point with the facts of this case and do not create genuine disputes of material fact. Likewise, Martin has asserted no facts that indicate PNC failed to exercise ordinary care in retaining or supervising its employees, creating a foreseeable risk of harm to others, *see Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998), and summary judgment is therefore appropriate on his claim for negligent retention and supervision.

Martin has, however, demonstrated a genuine dispute of material fact regarding his claim for negligent misrepresentation. PNC's representatives had a duty, separate from the Agreement and the UCC, to exercise reasonable care and competence in obtaining and communicating information to Martin in response to

5

his direct inquiry as to whether the check he deposited into his account had cleared. *See Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 580 (Ky. 2004). Martin contends that Friedman, a PNC employee, informed him that the check had cleared and that funds were available, and that Martin relied on this assertion when he instructed Friedman to wire money to the Tokyo account. Martin also asserts that later statements by Friedman and Jennewein acknowledged that Friedman had made an error.

PNC denies that these statements were made and argues that if they were made, they cannot constitute negligent misrepresentation; however, PNC's arguments cannot justify summary judgment in its favor. At this stage of the action, the court must accept Martin's contention that Friedman and Jennewein made the statements to him. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Friedman's statement that the check had cleared and that funds were available is an affirmative false statement and not merely an omission of any restrictions or limitations on the deposited and available funds. *See Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F.Supp.2d 702, 714 (W.D.Ky. 2010). Though PNC had no duty to authenticate the check when it was deposited, it did have a duty, separate from the Agreement, *see Presnell* at 583, to exercise reasonable care in providing information in response to Martin's direct inquiry. Finally, though Kentucky law limits liability for negligent misrepresentation to transactions in which the provider of the information intends to influence the recipient, *see Presnell* at 580, such a limitation is improper even if Friedman did not

6

specifically intend for Martin to wire funds to Tokyo. Martin inquired as to the status of a deposited check, and Friedman's representation that the funds were available was necessarily intended to provide guidance to Martin in disposing of those funds or otherwise dealing with his account. To find otherwise would be to judge each action and statement by Martin and Friedman in a vacuum while ignoring the context of their conversation.

Genuine disputes of material fact therefore exist with regard to Martin's negligent misrepresentation claim, including but not limited to whether the statements were actually made as Martin describes and whether Friedman's statements to Martin violated PNC's duty to exercise reasonable care in obtaining and providing information.

Finally, the court will not consider Martin's counterclaim for detrimental reliance because it merely restates one element of his negligent misrepresentation claim and Martin did not argue it as a separate tort.

Martin has also moved to continue the trial date and pretrial deadlines (R. 30) pending resolution of PNC's motion for summary judgment. As that motion is now resolved, the court will refer the parties to Magistrate Judge Whalin for a settlement conference but will maintain the current schedule for pretrial conference and trial.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment (R. 25) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is denied on Martin's

7

counterclaim for negligent misrepresentation and granted on the remainder of Martin's counterclaims.

**IT IS FURTHER ORDERED** that the motion to continue (R. 30) is **DENIED** and this matter is referred to U.S. Magistrate Judge Dave Whalin for the purpose of conducting a settlement conference. The parties are directed to contact Magistrate Judge Whalin jointly to schedule said conference.

Signed on November 10, 2011

Jennifer B. Coffman, Judge
United States District Court